UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

Michael Lee Baumhaft,　　　　　　　　　　　　Case No.: 12-59494
　　　　　　　　　　　　　　　　　　　　　　　Chapter 7
　　　Debtor.　　　　　　　　　　　　　　　　Hon. Mark A. Randon
_____/

Stanley McGuffin,

　　　Plaintiff,

v.　　　　　　　　　　　　　　　　　　　　　　Adversary Proceeding
　　　　　　　　　　　　　　　　　　　　　　　Case No.: 12-06032
Michael Lee Baumhaft,

　　　Defendant.
_____/

**OPINION AND ORDER DENYING WITHOUT PREJUDICE
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

**I.　　INTRODUCTION**

In 2013, to settle a then 15-year-old $614,924.00 unpaid default judgment, Michael Baumhaft agreed to pay Stanley McGuffin $270,000.00 in installments over six years. The settlement agreement contained a default provision: if Baumhaft timely failed to cure a missed installment payment, he would owe $600,000.00, less any payments made.

At issue here is the February 2015 installment payment. McGuffin says Baumhaft failed to make the payment; Baumhaft insists it was paid. Despite this disagreement, Baumhaft made all other installment payments, except the last one.

Fast forward to April of 2019. Baumhaft believed he was entitled to a settlement release upon payment of the last $15,000.00 installment of the $270,000.00, which, to this day, he stands ready to pay. But McGuffin seeks a determination that–because of the missed February 2015 payment–Baumhaft instead owes $347,500.00 plus statutory interest (i.e., the $600,000.00 less payments received pursuant to the default provision).

Although the Court rejects Baumhaft's waiver and substantial performance arguments, a genuine issue of fact remains on the threshold issue of whether Baumhaft actually missed the February 2015 payment. Therefore, the Court **DENIES WITHOUT PREJUDICE** McGuffin's motion for summary judgment and sets the matter for an evidentiary hearing.

## II. BACKGROUND

### A. *Baumhaft's Previous Bankruptcy Filings*

Baumhaft was one of three owners of a gaming business, BHB Enterprises, LLC. BHB filed Chapter 11 bankruptcy in South Carolina; McGuffin was the court-appointed Chapter 11 Trustee. On September 30, 1998, McGuffin obtained a personal judgment against Baumhaft for $619,424.00 based on his misconduct as an insider of the business. Collection efforts were delayed because of Baumhaft's incarceration for bank fraud. The judgment was subsequently registered in Michigan for collection purposes.

On October 4, 1999, a Chapter 7 involuntary petition was filed against Baumhaft in the Eastern District of Michigan. The petition was not contested, and an order for

relief was entered. Baumhaft also did not contest the Trustee's request for a denial of discharge in that case.

### B. *Baumhaft's Current Bankruptcy Filing and Settlement Agreement*

On August 24, 2012, Baumhaft filed an individual Chapter 7 bankruptcy in the Eastern District of Michigan. McGuffin sought to deny Baumhaft's discharge and a determination that the default judgment was nondischargeable. The parties settled the adversary proceeding on July 15, 2013. Baumhaft agreed to pay McGuffin a total of $270,000.00, which consisted of 72 monthly payments of $2,500.00 beginning July 15, 2013, and six annual payments of $15,000.00 beginning June 1, 2014.[1] Baumhaft's attorney held $7,500.00 in trust to be applied to his last three monthly payments.

The settlement agreement contained a default provision:

In the event any Monthly or Annual Payment is not made when due, Baumhaft shall have a grace period of fifteen (15) days from the due date [for] the Monthly Payments, and sixty (60) days [from] the due date for the Annual Payments. If Baumhaft has not cured his non-payment of Monthly Payments or Annual Payments, as the case may be, a default shall have occurred. [I]n the event of default, all payment and release terms of this Agreement shall be null and void, and the amount of the Judgment held by McGuffin shall be the sum of $600,000 less any payments actually made pursuant to this Agreement, plus the statutory interest allowed under the Judgment until paid in full.

---

[1]Baumhaft did not exercise any of the discount options.

McGuffin says Baumhaft made total payments of $252,500.00.[2] But, because he believes Baumhaft missed the February 2015 payment, McGuffin seeks judgment in the amount of $347,500.00 plus statutory interest.[3] Baumhaft believes he has made all of the monthly payments towards the $270,000.00 and only owes $15,000.00 for the last annual payment.

### C. *Baumhaft's Default of the Settlement Agreement*

McGuffin's attorney first informed Baumhaft in an email dated January 15, 2016, that a default had occurred when he failed to make the monthly payment for February 2015. He informed Baumhaft again in an email dated February 5, 2016, that he was in default, and further indicated that he owed $600,000.00 less the payments already made. McGuffin's attorney was willing to accept $157,500.00 if Baumhaft paid it on or before February 20, 2016.

Baumhaft says that McGuffin's attorney told him in February of 2016, to "just continue making the payments." Baumhaft understood that to be a "reinstatement of the agreement as long as [he] continued the payments."

Despite Baumhaft's belief, McGuffin's position that Baumhaft owed the default judgment amount has not changed. On March 26, 2019, McGuffin's attorney reiterated to Baumhaft's attorney that Baumhaft missed the payment in February of 2015, and was

---

[2]During the hearing on this motion, McGuffin stressed that the $7,500.00 could only be applied to the last three payments, but according to the accounting, that amount seems to have been credited at the beginning of the payment schedule.

[3]McGuffin arrived at this amount by taking the $600,000.00 default judgment and crediting Baumhaft $252,500.00.

-4-

obligated to pay the full judgment amount of $600,000.00 plus statutory interest less any payments made. McGuffin's attorney indicated that "we are willing to continue taking monthly and annual payments until this balance is paid in full. Otherwise, we will enforce our collection remedies under the Settlement Agreement." On June 7, 2019, McGuffin informed Baumhaft that he was "not in a position to waive the balance due under the agreement in exchange for curing any missed payments and the $15,000 referenced in your email." McGuffin again informed Baumhaft on July 25, 2019, that a default occurred in February of 2015, and he owed $600,000.00 less any payments made. At that time, McGuffin agreed to accept a cash payment of $275,000.00 in full settlement, if the funds were received on or before August 23, 2019.

### III. STANDARD OF REVIEW

Under Rule 56 of the Federal Rules of Civil Procedure, made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7056, summary judgment must be granted "if the movant shows that there are no genuine issues as to any material fact in dispute and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *CareToLive v. Food & Drug Admin.*, 631 F.3d 336, 340 (6th Cir. 2011). The standard for determining whether summary judgment is appropriate is whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Pittman v. Cuyahoga County Dep't of*

*Children Services*, 640 F.3d 716, 723 (6th Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)).

The Court must draw all reasonable inferences in favor of the party opposing the motion. *Pluck v. BP Oil Pipeline Co.*, 640 F.3d 671, 676 (6th Cir. 2011). However, the nonmoving party may not rely on mere allegations or denials, but must "cit[e] to particular parts of materials in the record" as establishing that one or more material facts are "genuinely disputed." Fed. R. Civ. P. 56(c)(1). A mere scintilla of evidence is insufficient; there must be evidence on which a jury could reasonably find for the non-movant. *Hirsch v. CSX Transp., Inc.*, 656 F.3d 359, 362 (6th Cir. 2011).

## IV. APPLICABLE LAW AND ANALYSIS

### A. *McGuffin did not Waive his Right to Enforce the Default Provision, but there is a Genuine Issue of Fact Regarding Whether Baumhaft Missed a Payment in February of 2015*

Baumhaft first argues that McGuffin waived his right to enforce the default provision by: (1) telling him after the alleged missed payment to "just continue making the payments," and (2) accepting the ongoing payments for an another four years. The Court disagrees.

It is a "bedrock principle of American contract law that parties are free to contract as they see fit, and the courts are to enforce the agreement as written absent some highly unusual circumstance, such as a contract in violation of law or public policy." *Wilkie v. Auto-Owners Ins. Co.*, 664 N.W.2d 776, 782 (Mich. 2003). Parties may modify or waive

duties if such modification can be established by "clear and convincing evidence that the parties mutually agreed to a modification or waiver of the contract." *Quality Products & Concepts Co. v. Nagel Precision, Inc.*, 666 N.W.2d 251, 257 (Mich. 2003). "Waiver is defined as the intentional and voluntary relinquishment of a known right. It necessarily follows that conduct that does not express any intent to relinquish a known right is not a waiver, and a waiver cannot be inferred by mere silence." *Moore v. First Sec. Cas. Co.*, 568 N.W.2d 841, 844 (Mich. Ct. App. 1997) (internal citation omitted). There must be mutual assent to modify a contract:

> the freedom to contract does not authorize a party to *unilaterally* alter an existing bilateral agreement. Rather, a party alleging waiver or modification must establish a mutual intention of the parties to waive or modify the original contract. This principle follows from the contract formation requirement that is elementary to the exercise of one's freedom to contract: mutual assent.
>
> Where mutual assent does not exist, a contract does not exist. Accordingly, where there is no mutual agreement to enter into a new contract modifying a previous contract, there is no new contract and, thus, no modification. Simply put, one cannot unilaterally modify a contract because by definition, a unilateral modification lacks mutuality.
>
> The mutuality requirement is satisfied where a modification is established through clear and convincing evidence of a written agreement, oral agreement, or affirmative conduct establishing mutual agreement to waive the terms of the original contract.

*Quality Products & Concepts Co.*, 666 N.W.2d at 257-58 (emphasis in original) (internal citation omitted). Modification can be established through a written or oral agreement, or

through conduct.[4] *Id.* at 258; *see also Klas v. Pearce Hardware & Furniture Co.*, 168 N.W. 425, 427 (Mich. 1918) (finding that waiver "may be shown by a course of acts and conduct, and in some cases will be implied therefrom. It may also be shown by so neglecting and failing to act as to induce a belief that there is an intention or purpose to waive."); *Zeidler v. Burlingame*, 245 N.W. 527 (Mich. 1932) (finding a party waived a contract provision requiring written consent when the party accepted the assignment, attached it to the contract, and received payments from the assignee).

Assuming McGuffin told Baumhaft to "just continue making the payments," continued installment payments were permitted under the settlement agreement's default provision: "[In the event of a default,] the amount of the Judgment held by McGuffin shall be the sum of $600,000 less any payments actually made pursuant to this Agreement, plus the statutory interest allowed under the Judgment *until paid in full*" (emphasis added). And McGuffin made it clear that he was enforcing the default provision as written when he informed Baumhaft that the monthly and annual payments he accepted after the alleged default went towards the default judgment amount. As such, the Court finds as a matter of law that McGuffin did not agree to waive the default provision.

However, drawing all inferences in favor of Baumhaft, the Court finds there is a genuine issue of fact regarding whether Baumhaft missed a payment in February of 2015,

---

[4]There was no written agreement to waive the default provision.

-8-

12-06032-mar    Doc 41    Filed 07/06/20    Entered 07/06/20 16:58:45    Page 8 of 12

triggering the default provision. Baumhaft's affidavit states he "disagreed" that he missed a monthly payment in February of 2015. He also says, "I have made all payments required under the Settlement Agreement, except for the final $15,000 Annual Payment, which I held pending confirmation that this final payment would satisfy my obligations under the Settlement Agreement." Even though Baumhaft does not have documentation to prove his payments, the Court's function at the summary judgment stage is "not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). An evidentiary hearing is necessary for the Court to determine whether or not Baumhaft made the February 2015 installment payment.

### B. *Baumhaft's Payments do not Amount to Substantial Performance of the Settlement Agreement*

Baumhaft next argues that summary judgment should be denied because–after making the $15,000.00 final payment and the disputed February 2015 payment–he will have made all payments under the settlement agreement such that he can avail himself of the substantial performance doctrine:

> where a contract is made for an agreed exchange of two performances, one of which is to be rendered first, substantial performance rather than exact, strict or literal performance by the first party of the terms of the contract is adequate to entitle the party to recover on it. The intent of the doctrine is equitable: to prevent unjust enrichment or the inequity of one party's getting the benefit of performance, albeit not strictly in accord with the contract's terms, with no obligation in return. The courts will allow recovery under the contract, less allowance for deviations, where a party in good faith has

> substantially performed its obligations. The doctrine is widely applied to building contracts, though not always limited to them.

*Star of Detroit Line, Inc. v. Comerica Bank*, No. 198090, 1999 WL 3345488, at *3 (Mich. Ct. App. Feb. 16, 1999) (citations omitted). "A contract is substantially performed when all the essentials necessary to the full accomplishment of the purposes for which the thing contracted has been performed with such approximation that a party obtains substantially what is called for by the contract." *Gibson v. Group Ins. Co.*, 369 N.W.2d 484, 486 (Mich. Ct. App. 1985) (quoting 6A Michigan Law & Practice, Contracts, § 314, pp. 315-316). "Whether a party has rendered substantial performance of a contract is generally a question of fact. But, when there is no genuine issue of material fact, then a court may rule on summary judgment." *Sun Valley, Ltd. v. Galyan's Trading Co., LLC*, No. 13-13641, 2014 WL 1030956, at *7 (E.D. Mich. March 17, 2014). On this issue, *Middlebelt Plymouth Venture, LLC v. Moe's Southwest Grill, LLC*, 424 F. App'x 541 (6th Cir. 2011) is controlling.

In *Middlebelt Plymouth Venture, LLC*, plaintiff leased defendant part of a shopping center it owned. When defendant backed out of the lease, plaintiff filed a lawsuit that resulted in a settlement agreement. The defendant was required to pay plaintiff $300,000.00 over 13 monthly installments. However, if defendant failed to make a timely payment, plaintiff could seek a $400,000.00 judgment. *Middlebelt Plymouth*

*Venture, LLC*, 424 F. App'x. at 542.  The defendant made one installment payment late, but the district court denied plaintiff's motion for a $400,000.00 judgment.  *Id.* at 542-43.

The Sixth Circuit Court of Appeals framed the issue as "whether [defendant] 'substantially complied' with the settlement agreement, permitting the court to excuse the late payment, or whether 'time was of the essence,' precluding the court from declining to enforce the agreement by its terms." *Id.* at 543.  "When time is of the essence, . . . 'the stipulation as to the time must be observed.'" *Id.* (quoting *Nedelman v. Meininger*, 180 N.W.2d 37, 43 (Mich. Ct. App. 1970)).  The Court held that time was of the essence because the language in the settlement agreement provided that plaintiff "shall be entitled" to seek a consent judgment, there were scheduled due dates for payment, a fixed cure period, it contained a clause making the contract void if defendant did not cure a late payment, there was a clear sanction upon default, and there were only two defenses to the entry of a consent judgment. *Id.* at 544-45.

Similarly, the settlement agreement in this case provided that "[i]f Baumhaft has not cured his non-payment of Monthly Payments or Annual Payments, as the case may be, a default *shall have* occurred" (emphasis added).  There were scheduled due dates and a fixed cure period.  In the event of a default, all payment terms became "null and void."  Thus, upon default, Baumhaft became liable for the entire $600,000.00 judgment amount.  And there were no defenses to the default.  Even though the agreement did not include the

-11-

words "time is of the essence," they are not necessary for the Court to find the parties intended such result. *Friedman v. Winshall*, 73 N.W.2d 248, 253-54 (Mich. 1955):

> [a]n examination of the cases will show . . . that those words [time is of the essence] are not essential. Any words which show that the intention of the parties is that time shall be of the essence of the contract or any clause which provides in unequivocal terms that if the fulfilment is not within a specified time the contract is to be void will have that effect.

The Court finds as a matter of law that time was of the essence in this settlement agreement, Baumhaft cannot substantially comply with the agreement by now making the disputed missed payment *outside of the cure period*, and the agreement must be enforced according to its terms.

## V. CONCLUSION

The Court will conduct an evidentiary hearing on ***August 20, 2020, at 10:00 a.m.*** to determine: (1) whether Baumhaft missed the February 2015 payment; and (2) the total amount of payments Baumhaft made. Discovery is permitted through ***August 13, 2020***.

**IT IS ORDERED**.
**Signed on July 6, 2020**



/s/ Mark A. Randon
**Mark A. Randon**
**United States Bankruptcy Judge**